**Maria CARDONA, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDU-CATION AND WELFARE, Defendant.**

**Civ. No. 239–68.**

United States District Court, D. Puerto Rico.

May 27, 1971.

Jose B. Diaz Asencio, P. R. Legal Services, Inc., Rio Piedras, P. R., for plaintiff.

Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., for defendant.

MEMORANDUM and ORDER

FERNANDEZ-BADILLO, District Judge.

Claimant, Maria Cardona, filed an application for old-age insurance benefits on March 16, 1966 under section 202(a) of the Social Security Act,[1] 42 U.S.C. § 402(a) which was denied at the outset upon determining that the wages claimed could not be credited to her because they were not earned under a valid employer-employee relationship. Thus, she was found to be uninsured for purposes of the Act. She requested reconsideration and the Administration affirmed the disallowance of her claim stating that "the evidence of record and the money discrepancies * * * establish that a valid employer-employee relationship did not exist between the claimant and her alleged employers" (Tr. p. 73). She was then granted an administrative hearing before an examiner who heard claimant's own testimony and that of four witnesses who testified in her behalf. After considering the oral as well as the documentary evidence, the hearing examiner found that the claimant earned no quarters of coverage, that she was not fully insured, and, consequently, was not entitled to retirement insurance benefits. The Appeals Council adopted the examiner's decision as correct and so notified plaintiff on February 7, 1968. Following the procedure for judicial review established by 42 U.S.C. § 405(g), Mrs. Cardona filed a complaint in this Court praying

---

1. Hereinafter referred to as the Act.

that the Secretary's final decision be reversed and that she be granted the benefits to which she is allegedly entitled. On January 17, 1969 the case came to be heard upon defendant's motion for summary judgment. Defendant was represented by Assistant U. S. Attorney, Candita R. Orlandi, and no one appeared on plaintiff's behalf. However, plaintiff's counsel was granted 15 days within which to answer defendant's memorandum, on file since January 7, 1969, after which the matter would stand submitted. On November 25, 1969 the Clerk wrote to plaintiff's counsel advising them that the time to file their brief had expired and that "if no brief is filed within the next five days the matter will be submitted to the Court for its consideration." This warning, notwithstanding, the case was kept at the Clerk's office awaiting the filing of plaintiff's brief and was submitted to the Court for disposition during the early part of May 1971.

The Court's task on review is to decide whether there is substantial evidence in the record to support the Secretary's factual determination that claimant was not insured because she had earned no quarters of coverage [2] due to the absence of a bona-fide employer-employee relationship.

Maria Cardona, born in the year 1894, has asserted that she first obtained employment when she was over 70 years old. Her claim for retirement benefits is based on the wages allegedly paid by her deceased husband's brother and sister. She testified that she worked at the bakery of Eusebio Velez, her brother-in-law, for two years cleaning and waxing floors, washing baking utensils and doing domestic chores during her extra hours. She recalled working eight hours a day and receiving from $22 to $25 weekly for her regular work at the bakery.[3] A written statement of this employer dated August 5, 1966 indicates that claimant "worked from 4 to 10 hours daily according to the needs of the business" and that he thought that her salary was $14 or $15 weekly (Tr. p. 56). On April 7, 1967 Eusebio Velez, again as claimant's employer, gave a written declaration setting forth the wages paid to her during her years of service—1963 and 1964. He reported a fixed wage of $48.75 for the calendar quarters of each of those years.[4] Claimant herself in written information given to the Social Security Administration on March 4, 1966 said that she could not recall the salary received from Yuyo Velez[5] and thought it amounted to $40 monthly or weekly. Eusebio Velez served as a witness during the hearing and testified that he paid plaintiff $48.75 each quarter as shown in his written statement, that claimant's version as to a weekly salary of $20 or $25 was incorrect and that "she would work 5 or 6 hours" (Tr. p. 36). On this evidence the hearing examiner concluded in his written opinion that "these earnings do not qualify for social security coverage as they do not constitute earnings of $50 in any quarter."

The remaining evidence has to do essentially with plaintiff's work for her sister-in-law, Eusebia Velez, for whom she allegedly did housekeeping work besides assisting her in a clothes bazaar with "the finishing of clothes, the hemming of the dresses and the delivery of same" during the years 1965 and 1966 (Tr. pp. 54, 55 & 65). Her main duties were as housekeeper for Eusebia. In a

2. Under the provisions of the Act, an individual of plaintiff's age is required to have 5 quarters of coverage to be fully insured.

3. Claimant could not state how much more she was paid by Eusebio Velez for her domestic work during "extra hours."

4. Section 213(a) (1) of the Act defines a quarter or a calendar quarter as a period of three calendar months ending on March 31, June 30, September 30, or December 31. The term quarter of coverage is defined therein as a quarter in which an individual has been paid $50 or more in wages.

5. Yuyo Velez and Eusebio Velez are the same person.

written statement for the Administration dated March 14, 1966 plaintiff set her salary at $16.00 weekly. A subsequent statement of May 6, 1966 contains the following significant comments which merit quoting herein:

> "I am still working for Eusebia Velez. I do not know how much she pays me. I think it is $18.00 per week. I do not know how much she deducted. I do not know how much I receive exactly each week. I want to clarify that since I am working for Eusebia Velez I have always receive[d] $18.00 not less than that amount. I have a fixed salary of $18 weekly". (Tr. p. 52)

During the hearing she again stated that she was paid the sum of $18.00 a week. Her employer, in turn, indicated that she kept no records and that claimant's salary varied from $15 to $18 weekly in cash (Tr. p. 54). When questioned as to the fixed sum of $218.00 reported as wages paid by her for the last two quarters of 1965 and the first quarter of 1966 [6] she answered: "I'm not sure. I put that amount but I'm not sure exactly the amount I paid her" (Tr. p. 30).

The brief testimony of witnesses Pedro Aviles and Juan Quiles add little to the facts except that each one stated they knew she had worked for her alleged employers.[7] There are conflicting versions as to this. Several neighbors indicated that claimant does not work. Those living in front of Mrs. Eusebia Velez told a Social Security investigator that she did not use the services of any person. Another stated, however, that she had often seen claimant working at the house of the alleged employer and one Carmen Rosas informed that she had seen plaintiff cleaning the bakery yard, that she worked as a housekeeper for Mr. Eusebio Velez but did not know what she was paid.

This is a troublesome case for the record is plagued with contradictions and small inconsistencies which cannot be ignored. In addition to those already discussed, there is a flagrant contradiction in the declarations given by both claimant and Mrs. Velez in an effort to explain plaintiff's absence from work on May 6, 1966. In a written statement plaintiff said:

> "Today (5/6/66) I have not reported to the work for Eusebia Velez because I have two grandchildren who are ill and I am caring for them."

Eusebia Velez, on her part, stated:

> "Maria Herminia Cardona is not today (5/6/66) at my home because I sent her to deliver some dresses to my customers."

Neither of the two employers produced records to support their assertions. Plaintiff was advised in the notice of hearing before the examiner that she should bring her employers *and all of their records since 1960 including income tax and social security returns* (emphasis supplied). In a written statement made by plaintiff in 1966 (Tr. p. 47) she asserts that employer Eusebio Velez filed tax returns for her. No such documents were made a part of the record.

It is a settled rule in Social Security cases that the resolution of conflicting evidence and the evaluation as to the credibility of witnesses rests with the Secretary. Deel v. Gardner (W.D.Va. 1968) 288 F.Supp. 105; Collins v. Secretary of Health, Education and Welfare (W.D.Ark.1968) 286 F.Supp. 81; Lamont v. Finch (D.C.Pa.1970) 315 F. Supp. 59. It can hardly be contested that the vagueness and repeated contradictions found in the oral and documentary evidence cast serious doubt upon the employer-employee relationship claimed.

In the case of Reynolds v. Gardner, (W.D.Va.1966) 271 F.Supp. 676, aff'd (4th Cir. 1967) 381 F.2d 380, the Court

---

6. See: Statement of Employer, Tr. p. 49.

7. Aviles said that plaintiff worked "in Eusebia's house," and Quiles testified that "she worked in Yuyo Velez' bakery * * * but I don't know exactly when" (Tr. pp. 24, 25 & 26).

in upholding the denial of old-age benefits pointed out:

"The entire record, both facts and inferences that can be drawn from these facts, is to be considered. To reverse the Secretary's decision, it is not enough that this court find that a decision to the contrary would also be reasonable, rather this court must come to the conclusion that the decision below was not rational."

Upon the facts and the inferences drawn therefrom, the Court is bound to uphold the Secretary's decision in the present case. It is clear that the Secretary's findings rest in great measure upon credibility determinations made after evaluating the testimony of the various witnesses and the written statements made. Under these circumstances, his findings are conclusive and binding. A careful study of the entire record leads to the conclusion that the Secretary as trier of the facts made a reasonable and fair determination supported by substantial evidence of plaintiff's claim.

The complaint must be dismissed and the decision of the Secretary of Health, Education and Welfare denying old-age benefits is hereby affirmed.